IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TYRONE SAVAGE,                )
                              )
      Movant/Defendant,      )
                              )
v.                            )   Civ. A. No. 07-227-GMS
                              )   Cr. A. No. 03-94-GMS
                              )   Cr. A. No. 04-28-GMS
UNITED STATES OF AMERICA,     )
                              )
      Respondent/Plaintiff.  )

**MEMORANDUM OPINION**

---

Tyrone Savage. *Pro se* movant.

Robert F. Kravtez, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for respondent.

---

Oct 5, 2010
Wilmington, Delaware

SLEET, Chief Judge

## I. INTRODUCTION

Movant Tyrone Savage ("Savage") filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, asserting a total of three claims for relief. (D.I. 49.) The Government filed its answer in opposition. (D.I. 61.) For the reasons discussed, the court will deny Savage's § 2255 motion as meritless without holding an evidentiary hearing.

## II. BACKGROUND

In March 2003, the federal grand jury for the Eastern District of Pennsylvania returned a four-count Indictment charging Savage with four counts of bank robbery, in violation of 18 U.S.C. § 2113(a). In October, 2003, the federal grand jury for the District of Delaware returned a five-count Indictment charging Savage with four counts of bank robbery and one count of attempted bank robbery, also in violation of 18 U.S.C. § 2113(a). Pursuant to Savage's request, the case in the Eastern District of Pennsylvania was transferred to the District of Delaware under Rule 20 of the Federal Rules of Criminal Procedure. Savage consented to the consolidation of the charges in both plea agreements and to the transfer of the prosecution for all charges to this district. On May 6, 2004, Savage pled guilty pursuant to signed plea agreements to all counts in both Indictments.

The pre-sentence report calculated Savage's sentencing guideline range at 120 to 150 months (10 to 12.5 years) of imprisonment for each of the nine counts under the two plea agreements. On June 8, 2005, the court sentenced Savage to 120 months (10 years) of imprisonment on all counts, to be served concurrently, followed by three years of supervised release. Savage appealed, and the United States Court of Appeals for the Third Circuit affirmed

1

his sentence. *United States v. Savage*, 180 F. App'x. 334 (3d Cir. 2006). Savage filed a petition for a writ of certiorari in the United States Supreme Court, which the Supreme Court denied on October 2, 2006. *See Savage v. United States*, 127 S.Ct. 307 (2006).

## III. EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the petitioner is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. As explained below, the record conclusively demonstrates that Savage is not entitled to relief for the claims asserted in his § 2255 motion. Accordingly, the court concludes that an evidentiary hearing is not warranted.

## IV. DISCUSSION

Savage's § 2255 motion asserts the following three claims for relief: (1) the two federal public defenders who represented him provided ineffective assistance by failing to investigate and present evidence of Savage's "dysfunctional background" during the sentencing hearing; (2) the public defender representing Savage on his Pennsylvania charges was operating under a conflict of interest because he had an account at one of the Citizen's Bank branches in Philadelphia that Savage robbed; and (3) the public defender representing Savage on the Pennsylvania charges provided ineffective assistance by misinforming Savage about his maximum sentencing exposure.[1]

---

[1] The Eastern District of Pennsylvania plea agreement in this case contains an appellate and collateral rights waiver, by which Savage expressly waived all rights to attack his conviction and sentence under 28 U.S.C. § 2255. A defendant's waiver of appeal and of collateral

2

A federal prisoner's claim for ineffective assistance of counsel is properly raised for the first time in federal district court as a § 2255 motion rather than on direct appeal. *See United States v. Garth,* 188 F.3d 99, 107 n.11 (3d Cir. 1999); *United States v. Cocivera,* 104 F.3d 566, 570 (3d Cir. 1996). The clearly established Supreme Court precedent governing ineffective assistance of counsel claims in the guilty plea context is the two-pronged standard enunciated by *Strickland v. Washington,* 466 U.S. 668 (1984) and *Hill v. Lockhart,* 474 U.S. 52, 58 (1985). Under the first *Strickland/Hill* prong, Savage must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland,* 466 U.S. at 688; *Hill,* 474 U.S. at 58. Under the second *Strickland/Hill* prong, Savage must demonstrate a reasonable probability that, but for counsel's error, he would not have pled guilty and would have insisted on proceeding to trial. *Hill,* 474 U.S. at 59; *United States v. Nahodil,* 36 F.3d 323, 326

---

challenges is generally enforceable if entered into knowingly and voluntarily, unless there is an unusual circumstance where an error amounting to a miscarriage of justice may invalidate an otherwise valid waiver. *See United States v. Khattak,* 272 F.3d 557, 562 (3d Cir. 2001). Here, an analysis of the entire record, with particular reliance on the specific terms of the plea agreement from the Eastern District of Pennsylvania, demonstrates that Savage knew and understood the significance of the binding collateral attack waiver provision in the plea agreement. There is also no indication that an enforcement of the waiver would work a miscarriage of justice in this case. Thus, claims two and three, which allege ineffective assistance on the part of the Pennsylvania federal public defender with respect to the Pennsylvania plea agreement, would normally be foreclosed by the waiver in the Pennsylvania plea agreement.

However, according to recent Third Circuit precedent, a federal district court must personally address a defendant regarding a waiver of appellate and collateral rights rather than rely on the prosecutor's recitation of the terms of a plea agreement. *See United States v. Goodson,* 544 F.3d 529, 539 (3d Cir. 2008). In this case, when the court conducted Savage's Rule 11 plea colloquy in 2004, the Government, not the court, discussed the waiver of appellate rights contained in the Pennsylvania plea agreement. Given these circumstances, the court will exercise prudence and consider the merits of claims two and three, rather than enforce Savage's waiver of his collateral rights.

(3d Cir. 1994). In order to sustain an ineffective assistance of counsel claim, Savage must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that the representation was professionally reasonable. *Strickland*, 466 U.S. at 689.

### A. Claim One: both federal public defenders provided ineffective assistance by failing to present a mitigation argument at sentencing

In claim one, Savage contends that defense counsel provided ineffective assistance by failing to investigate and present the following evidence of his "dysfunctional background" during the sentencing hearing: he was abused and abandoned by his alcoholic mother; he was abused while in foster care; he spent a part of his life homeless; and he was addicted to alcohol and crack cocaine. Savage asserts that this information would have provided essential information for a downward departure.

After reviewing claim one within the *Strickland/Hill* framework, the court concludes that Savage's argument is unavailing. Several sections of the United States Sentencing Guidelines Manual ("U.S.S.G.") prohibit district courts from departing downward on the grounds set forth by Savage.[2] For instance, U.S.S.G. § 5H1.4 prohibits a downward departure on the basis of drug or alcohol dependence, U.S.S.G. § 5H1.12 prohibits a downward departure due to the lack of guidance for a youth and similar circumstances indicating a disadvantaged upbringing, and U.S.S.G. § 5H1.10 states that a defendant's socioeconomic status is not relevant in the

---

[2]Pending amendments to U.S.S.G. § 5H1.4, § 5H1.10, and § 5H1.12 will become effective on November 1, 2010, and are therefore not relevant to the instant discussion.

determination of a sentence.³ In sum, defense counsels' failure to request a downward departure on the basis of these "irrelevant" offender characteristics did not constitute ineffective assistance. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)(counsel does not provide ineffective assistance by failing to raise meritless arguments or issues).

To the extent Savage contends that counsels' failure to present the aforementioned evidence somehow prevented the court from varying downward from the applicable advisory Guidelines range, this argument is also unavailing.⁴ Defense counsel filed a lengthy sentencing memorandum prior to sentencing, which referenced Savage's background as an adopted child raised by a single mother under difficult circumstances. The memorandum also described the mental health treatment Savage received as a teenager for a hyperactivity disorder, and that his adopted mother did not encourage him to take his prescribed medication. In addition, during the sentencing hearing, defense counsel provided the court with the following information about Savage's background: Savage was adopted and grew up without a male role model; he suffered from learning disabilities, yet taught himself to read at the age of 17; and his criminal history

---

³Subchapter H of the Sentencing Guidelines contains policy statements addressing "the relevance of certain offender characteristics to the determination of whether a sentence should be outside the applicable guideline range." U.S.S.G. Ch. 5, Pt. H, intro. comment. After the decision in *United States v. Booker*, 543 U.S. 320 (2005), the Sentencing Guidelines are advisory, not mandatory. Nevertheless, courts must still consider the Sentencing Commission's policy statements when determining whether a certain circumstance was adequately considered in formulating a defendant's sentencing guideline. 18 U.S.C. § 3553(b)(1).

⁴The term "departure" refers to a case where a court "reaches a sentence above or below the recommended Guidelines range through the application of Chapters Four or Five of the Sentencing Guidelines." *United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007), overruled in part on other grounds by *Irizarry v. United States*, 553 U.S. 708, 713 n. 1 (2008). In contrast, the term "variance" refers to a case where a court "enhances or detracts from the recommended range through application of [18 U.S.C. § 3553] factors." *Id.*

involved mostly non-violent property offenses. Defense counsel also engaged in a discussion with the court regarding Savage's background and how it compared to a similarly-situated defendant who had been recently sentenced by the court. However, when defense counsel started to address some of the issues raised by the court, Savage asked counsel to end the discussion because he thought counsel had addressed the issues sufficiently.

After hearing from both the Government and the defense, the court stated

> [g]iven this fact, this record of incorrigibility, it seems reasonable to me that in addition to giving consideration and weight to all of the relevant sentencing factors that have been argued today and those that have not been mentioned - and they are all relevant - the court must give considerable weight to the need to protect the public from the commission of further crimes.
>
> * * * *
>
> Thus, after considering, among others, the factors outlined in Title 18 of Section § 3553(a) and the underlying goals of sentencing, including punishment, deterrence, and rehabilitation, I am sentencing you to [] a term of 120 months on each of counts one through four of criminal action noumber 04-28 and a term of 120 months on each of counts one through five on criminal action number 03-94, all such terms to run concurrently with each other.

(D.I. 61, Exh. 2 at pp. 69-70).

This record precludes Savage from demonstrating that counsel's failure to discuss in detail Savage's drug dependence, socio-economic status, and lack of guidance during his youth prejudiced him. First, as described above, defense counsel did, in fact, explain Savage's "dysfunctional" history at length as a sentencing factor under 18 U.S.C. § 3553(a). Defense counsel even asked the court to consider a sentence of 60 months of incarceration with the remainder of time to be spent in a halfway house. Second, because Savage himself instructed defense counsel not to pursue any further mitigation argument at sentencing, Savage cannot

6

demonstrate that counsel performed ineffectively by failing to present additional mitigation evidence, or that he was prejudiced by counsel's compliance to his instructions. *See Schriro v. Landrigran*, 550 U.S. 465 (2007). Accordingly, the court will deny claim one as meritless.

### B. Claim two: the assistant federal public defender from Pennsylvania provided ineffective assistance during the sentencing hearing because he was operating under a conflict of interest

In claim two, Savage contends that the assistant Federal public defender from Pennsylvania ("Pennsylvania defender") was operating under a conflict of interest while representing Savage, because the attorney had a bank account at one of the Citizens Bank branches that Savage robbed. Savage asserts that the defender's "overinvolvement in the Citizens Bank branch" caused the defender to trick and force him into pleading guilty. (D.I. 49-2, at p. 9.)

When setting forth the evidence it would present if the case went to trial, the Government described the robbery of the Citizens Bank branch at issue as follows:

> the robber came in, confronted a customer service representative, grabbed her by the arm, took her to a door to the teller stations and demanded to be let in. She told him she didn't have a key. At that point, the robber jumped over the counter, confronted two people, a manage and another teller behind, demanded, "where is the money? Open the drawers." There was one drawer that was opened, money was taken out of that, and the robber fled.

(D.I. 61, Exh. 1, at p. 22.) Thereafter, Savage's two public defenders, the Government, and the court engaged in the following exchange, which appears to have formed the basis for Savage's allegation that the Pennsylvania defender was operating under a conflict of interest:

> DELAWARE DEFENDER: Your Honor, the only amendments would be the things that Mr. Savage would have no knowledge of about the quality of the banks' photos, etc., those kind of statements by the prosecutor. Then, secondly, as to the bank in which the Government indicated there was a touching of the arm, those facts aren't essential to the

7

admission of the guilty plea that we're not admitting or denying those at this point and they're not relevant to the guilty plea.

\* \* \* \*

PENNSYLVANIA DEFENDER: Not admitted or denied. It's not material to the elements.

COURT: [Assistant U.S. attorney,] do you concur?

GOVERNMENT: To the extent that it displays force or intimidation, I would suggest it is relevant to the elements of the offense but it's not something that we're making any basis for sentencing or anything like that upon.

COURT: Understood. There were I believe other aspects of intimidation admitted.

PENNSYLVANIA DEFENDER: Yes, your Honor. In fact, he vaulted the counter. According to the facts -

GOVERNMENT: Right.

PENNSYLVANIA DEFENDER: - recited by the Assistant United States Attorney, he vaulted the teller's counter, so that is clearly intimidation. I know the bank, personally. It's my bank. It's a very small bank. It's a very small space. The lobby is very small. And I think the evidence was, and on the pictures I have seen of him, that he vaulted. That is legally sufficient, I believe.

COURT: Okay. The court has no difficulty with concluding that there is a sufficient factual basis for the plea.

(D.I. 61, at p. 9.)

The Sixth Amendment guarantees a criminal defendant "the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest." *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988). To prevail on a Sixth Amendment claim based on a conflict of interest, the petitioner "must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). An actual conflict of interest arises when "trial

8

counsel's interests and the defendants' interests diverge[] with respect to a material factual or legal issue or to a course of action." *Government of Virgin Islands v. Zepp*, 748 F.2d 125, 135 (3d Cir. 1984).

Although typical conflict of interest cases arise in the context of an attorney's representation of multiple clients, the Third Circuit has held that conflicts of interest can arise in other cases, such as when counsel's personal interests are "'inconsistent, diverse, or otherwise discordant' with those of his client and [those interests] affected the exercise of his professional judgment on behalf of his client."[5] *Id.*; *see also United States v. Gambino*, 864 F.2d 1064, 1070 (3d Cir. 1988). A petitioner establishes an actual conflict of interest by "demonstrat[ing] that some plausible defense strategy or tactic might have been pursued . . . [and] that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Gambino*, 864 F.2d at 1070. A Sixth Amendment conflict of interest claim is usually treated as a special type of ineffective assistance of counsel claim because the attorney's assistance will be presumed to have been prejudicially ineffective if the attorney actively

---

[5]The seminal Supreme Court case involving actual conflicts of interest is *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). *Sullivan* and subsequent Supreme Court jurisprudence regarding actual conflicts of interest arose in the context of an attorney's representation of multiple clients, where "the conflict exists between the interests of one defendant and the interests of other defendant's served by the same attorney." *Zepp*, 748 F.2d at 135. Recently, in *Mickens v. Taylor*, 535 U.S. 162 (2002), the Supreme Court questioned the applicability of *Sullivan* to conflicts arising outside the context of multiple representation, and opined that it remains an open question whether *Sullivan* should be extended to other kinds of conflict of interest cases. *Id.* at 175-76. However, in its 1983 *Zepp* decision, the Third Circuit expressly extended *Sullivan* to conflict of interest cases other than those arising in the multiple representation context. *Zepp*, 748 F.2d at 135. The Third Circuit has not addressed the effect of *Mickens* on its holding in *Zepp*. Therefore, the court assumes that *Zepp*'s extension of *Sullivan*'s doctrine regarding actual conflicts of interest applies in Savage's case.

represented conflicted interests that adversely affected his performance. *See Cuyler*, 446 U.S. at 350. As noted by the Supreme Court, courts must keep in mind the principle that "defense counsel is in the best position to determine if a conflict exists." *Mickens*, 535 U.S. at 167-68.

As an initial matter, the court notes that Savage has not provided any evidence that his robbery of the particular Citizens Bank branch at which the Pennsylvania defender had his account impacted the Pennsylvania defender's relationship with said branch, or that the robbery had a negative financial or emotional impact affecting the defender's ability to represent Savage.[6] In fact, when viewed in context, it appears that the Pennsylvania defender only uttered his statements regarding the physical layout of the bank and Savage's "vaulting" over the counter to show that the factual basis for the plea had been established, and that there was no need to consider if the "intimidation" element had been met by the fact that Savage had touched someone's arm.

Given the absence of any indication that the Pennsylvania defender's personal interests were "inconsistent, diverse, or otherwise discordant" with those of Savage and that those interests affected the exercise of his professional judgment on behalf of Savage, the court concludes that the Pennsylvania defender was not operating under an actual conflict of interest. Accordingly, the court will not presume the existence of prejudice under *Strickland* or *Hill*.

The court also concludes that Savage has failed to demonstrate prejudice under the *Strickland/Hill* standard that would be necessary to prevail on this claim. It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that creates a

---

[6]As noted by the Government in its answer, Citizens Bank deposits were insured by the Federal Deposit Insurance Corporation for $100,000 (at that time). Any assertion that the Pennsylvania defender was adversely affected by Savage's robbery would be pure speculation.

10

"formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). During his plea colloquy, Savage admitted that he committed the nine robberies charged in the two indictments, including the robberies of two Citizens Banks branches in Philadelphia. Savage has not presented any evidence in this proceeding to overcome the formidable barrier of veracity that has attached to his admission of guilt. As a result, Savage cannot demonstrate a reasonable probability that the Pennsylvania defender's statement changed the result of the guilty plea or sentencing proceedings, or that the Pennsylvania defender's relationship with one particular branch of Citizen's Bank impacted his representation of Savage during the plea negotiations, plea colloquy, or sentencing hearing. Accordingly, the court will deny claim two as meritless.

### C. Claim three: the assistant federal public defender from Pennsylvania provided ineffective assistance with respect to the plea agreement based on charges in the Eastern District of Pennsylvania by misinforming Savage about his maximum sentencing exposure

In claim three, Savage contends that "defense counsel" provided ineffective assistance during the plea bargain, plea colloquy, and sentencing by misinforming Savage that there would be no enhancement for prior convictions and that Savage would receive a maximum sentence of 60 months. Savage supports this allegation with a typed letter about discovery from the Pennsylvania defender, on a paper containing letter head from the Federal public defender's office in Philadelphia. The letter also contains a handwritten note purportedly penned by the Pennsylvania defender, "promising" Savage that the maximum sentence he would receive if he pled guilty was 60 months of imprisonment. Nothing in claim three or the supporting documentation mentions to the Delaware defender. Consequently, the court concludes that claim

11

three only alleges ineffective assistance on the part of the Pennsylvania defender. Additionally, even though the court highly doubts that the Pennsylvania defender penned the handwritten "promise" of a maximum 60 month sentence, the court will presume, arguendo, that the Pennsylvania defender made an incorrect sentencing prediction.

"[A]n erroneous sentencing prediction by counsel is not ineffective assistance of counsel where [] an adequate plea colloquy was conducted." *United States v. Shedrick*, 493 F.3d 292, 298-299 (3d Cir. 2007). In this case, Savage was informed of his maximum sentencing exposure in the two written plea agreements, and also during his plea colloquy. For instance, the Delaware plea agreement set forth the maximum statutory sentence as 20 years on each of the five robbery counts (for a total of 100 years of imprisonment), and the Pennsylvania plea agreement set forth the maximum statutory sentence as 20 years on each of the four robbery counts (for a total of 80 each of the five robberies). Moreover, during the plea colloquy, the court informed Savage that his maximum sentence under the Pennsylvania plea agreement was 80 years and that his maximum sentence under the Delaware plea agreement was 100 years. The court also explained that it was not bound by any sentencing recommendations set forth within the plea agreements, and that Savage would not be able to withdraw his guilty plea if the court imposed a more severe sentence than Savage may have anticipated. Savage told the court that he understood the penalties recited by the court. Savage further stated on the record that nobody had attempted to force him to plead guilty, and that there were no other agreements, promises, or stipulations made outside of those contained in the written plea agreements.

This record demonstrates that the court fully informed Savage of the maximum possible sentence he faced, thereby correcting any erroneous sentencing prediction allegedly made by the Pennsylvania defender. Accordingly, the court will deny claim three as meritless.

## IV. PENDING MOTIONS

### A. Motion for Appointment of Counsel

Savage filed a motion for appointment of counsel during the pendency of this proceeding. (D.I. 67.) For the reasons set forth above, the court has decided to deny Savage's § 2255 motion as meritless. Accordingly, the court will deny his motion for appointment of counsel as moot.

### B. Motion to Amend § 2255 Motion

Savage also filed a motion to amend his § 2255 motion to add the argument that the "bank robbery statute is unconstitutional and invalid." (D.I. 73.) More specifically, Savage contends that 18 U.S.C. § 2113(a) is an unconstitutional exercise of the Federal Government's authority under the Commerce Clause.

Savage's motion to amend was filed well-outside the one-year limitations period applicable to § 2255 motions, and it seeks to add an entirely new claim to Savage's § 2255 motion. Accordingly, the court will deny the motion.[7] *See* Fed. R. Civ. P. 15(a),(c); *See also Mayle v. Felix*, 545 U.S. 644 (2005); *United States v. Duffus*, 174 F.3d 333, 336-37 (3d Cir. 1999) (finding that a new ineffective assistance of counsel claim asserted in a motion to amend after AEDPA's limitations period had already expired did not relate back to an ineffective

---

[7]The court notes that the Court of Appeals for the Third Circuit has already rejected a similar commerce clause challenge to 18 U.S.C. § 2113(a). *See United States v. Spinello*, 265 F.3d 150 (3d Cir. 2001). Therefore, Savage's motion to amend is also denied on the basis of futility.

13

assistance of counsel claim asserted in the original timely habeas petition); *U.S. v. Thomas*, 221 F.3d 430, (3d Cir. 2000)("Under Fed. R. Civ. P. 15(c), an amendment . . . clarif[ying] or amplif[ying] a claim or theory in the petition may, in the District Court's discretion, relate back to the date of the petition if and only if the petition was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case").

## V.     CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2008). A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court is denying all three claims of Savage's § 2255 motion as meritless. The court is persuaded that reasonable jurists would not find this assessment debatable. Therefore, the court will not issue a certificate of appealability.

## VI.    CONCLUSION

The court concludes that Savage is not entitled to relief pursuant to 28 U.S.C. § 2255. An appropriate order will issue.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TYRONE SAVAGE, | ) | |
| | ) | |
| Movant/Defendant, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 07-227-GMS |
| | ) | Cr. A. No. 03-94-GMS |
| | ) | Cr. A. No. 04-28-GMS |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent/Plaintiff. | ) | |

**ORDER**

For the reasons set forth in the Memorandum Opinion issued in this action today, IT IS HEREBY ORDERED that:

1. Movant Tyrone Savage's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED**. (D.I. 49.)

2. Savage's motion for the appointment of counsel is **DENIED**. (D.I. 67.)

3. Savage's motion to amend is **DENIED**. (D.I. 73.)

4. The clerk of the court is directed to terminate Savage's motion to proceed *in forma pauperis* (D.I. 50); this motion was granted on May 7, 2007 (D.I. 56).

5. A certificate of appealability will not issue for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

Oct 5, 2010
Wilmington, Delaware

CHIEF UNITED STATES DISTRICT JUDGE